IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHN STANCU, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:20-cv-864-E-BN |
| | § | |
| HYATT CORPORATION/HYATT | § | |
| REGENCY DALLAS, ET AL. | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Paying the filing fee to do so, Plaintiff John Stancu brings yet another *pro se* action against his former employer, Defendant Hyatt Corporation/Hyatt Regency (Hyatt), adding others: Defendants Brett Killingsworth, Mark Spinelli, Samuel Molina, and Micha Bell (the Hyatt Employees); and Defendant Ray Hunt. *See* Dkt. No. 3. Stancu's latest action was transferred to United States District Judge Ada Brown. *See* Dkt. No. 6. And Judge Brown referred it to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b). *See* Dkt. No. 7.

Hunt moves to dismiss Stancu's claims against him under Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. No. 12. And Hyatt and the Hyatt Employees answered and simultaneously filed motions to dismiss under Rule 12(b)(6). *See* Dkt. Nos. 17-20.

Hyatt moves to dismiss Stancu's claims under Title VII, the ADA, and the ADEA for failure to exhaust administrative remedies. *See* Dkt. No. 17. And the Hyatt

Employees move to dismiss Stancu's claims against them to the extent that (1) as a matter of law, individual employees cannot be held liable under the ADA, ADEA, or Title VII; and (2) Stancu has not pled enough facts to plausibly allege that any of the Hyatt Employees were his employer under the FMLA. *See* Dkt. No. 18.

Responses and replies were filed. *See* Dkt. Nos. 14, 23, 26-31.

And the undersigned enters these findings of fact, conclusions of law, and recommendation that the Court should grant Hunt's and the Hyatt Defendants' motions to dismiss insofar as the claims against them should be dismissed because none of these defendants were Stancu's employers under the applicable statutes; that the Court should grant Hyatt's motion to dismiss in part by dismissing Stancu's Title VII claims, his ADEA claims, and his ADA claims based on failure to promote and refusal to pay workers' compensation benefits for failure to exhaust administrative remedies; and that the Court should grant Stancu leave to file an amended complaint.

## Applicable Background

Until March 6, 2020, Stancu worked "as a shift engineer at the Hyatt Regency Dallas…. Having filed about twenty lawsuits in the past thirty years, he is also a prolific *pro se* litigant. Hyatt is his latest target." *Stancu v. Hyatt Corporation/Hyatt Regency Dallas*, 791 F. App'x 446, 447 (5th Cir. 2019) (per curiam); Dkt. No. 3 at 13.

As Stancu acknowledges, this lawsuit is his sixth against Hyatt. *See* Dkt. No. 3 at 3. The first two were consolidated and dismissed, after the court granted Hyatt summary judgment on Stancu's claims. *See Stancu v. Hyatt Corporation/Hyatt*

*Regency Dallas*, No. 3:17-cv-675-S-BN (consol. with 3:17-cv-2918-L), 2018 WL 4471786 (N.D. Tex. Aug. 28, 2019), *rec. accepted*, 2018 WL 4471692 (N.D. Tex. Sept. 18, 2019), *aff'd*, 791 F. App'x 446 (5th Cir. 2019). And the third, fourth, and fifth lawsuits are pending, consolidated before Judge Brown and referred to the undersigned for pretrial management. *See Stancu v. Hyatt Corporation/Hyatt Regency Dallas*, No. 3:18-cv-1737-E-BN (consol. with Nos. 3:18-cv-3383-E-BN & 3:19-cv-1971-E) (N.D. Tex.) (in which the dispositive motions deadline is June 30, 2021).

**Legal Standards**

In deciding a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). Such a motion is therefore "not meant to resolve disputed facts or test the merits of a lawsuit" and "instead must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020). Even so, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555; *see also Sewell*, 974 F.3d at 582 ("Although this framework is one-sided, the issue 'is not whether a plaintiff will ultimately prevail but whether he is entitled to offer evidence to support his claims.' The other side will

have its say later." (quoting *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *vacated on other grounds*, 113 F.3d 1412 (5th Cir. 1997))).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679); *see also Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("Where the well-pleaded facts of a complaint do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" (quoting *Iqbal*, 556 U.S. at 678 (quoting, in turn, FED. R. CIV. P. 8(a)(2)))).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, a plaintiff must allege more than labels and conclusions, and, while a court must accept all of a plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory

statements, will not suffice. *See id.* Instead, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that the plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *see also Inclusive Communities Project*, 920 F.2d at 899 ("'Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679; citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) ("[T]he degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context.")).

"*Pro se* complaints receive a 'liberal construction.' Even so, 'mere conclusory allegations on a critical issue are insufficient ....'" *Brown v. Tarrant Cnty., Tex.*, ___ F.3d ___, No. 19-10549, 2021 WL 150427, at *3 (5th Cir. Jan. 18, 2021) (quoting *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018), then *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989) (per curiam)).

Aside from "matters of which judicial notice may be taken under Federal Rule of Evidence 201," *Inclusive Communities Project*, 920 F.2d at 900 (citations omitted), a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion, *see Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *see also Basic Capital Mgmt.,*

*Inc. v. Dynex Capital, Inc.*, 976 F.3d 585, 589 (5th Cir. 2020) (Federal Rule of Evidence 201(d) "expressly provides that a court 'may take judicial notice at *any* stage of the proceeding,' and our precedents confirm judicially noticed facts may be considered in ruling on a 12(b)(6) motion." (citations omitted)).

Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *see also Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) ("The Civil Rules provide that an attachment to a complaint generally becomes 'part of the pleading for all purposes,' including for ruling on a motion to dismiss." (quoting FED. R. CIV. P. 10(c); citations omitted)). And, "[w]hen 'an allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls.'" *Rogers v. City of Yoakrum*, 660 F. App'x 279, 285 n.6 (5th Cir. 2016) (per curiam) (quoting *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (citing, in turn, *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940))).

Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). And, while the United States Court of Appeals for the Fifth Circuit "has not articulated a test for determining when a document is central to a plaintiff's claims,

the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). But, "if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

And a plaintiff may not amend his allegations through a response to a motion to dismiss. "[A] claim for relief" must be made through a pleading, FED. R. CIV. P. 8(a), and a response to a motion is not among the "pleadings [that] are allowed" under the Federal Rules of Civil Procedure, FED. R. CIV. P. 7(a); *see, e.g.*, *Klaizner v. Countrywide Fin.*, No. 2:14-CV-1543 JCM (PAL), 2015 WL 627927, at *10 (D. Nev. Feb. 12, 2015) ("All claims for relief must be contained in a pleading. A response to a motion is not a pleading and it is improper for the court to consider causes of action not contained in the pleadings." (citations omitted)).

**Analysis**

Stancu alleges that his current claims are made after he received the right-to-sue letter attached to his complaint, *see id.* at 4, 32-36, and that the facts underlying this lawsuit "occurred after the filing of the last claim (August 16, 2019)," *id.* at 4, which is also the date that he filed *Stancu v. Hyatt Corporation/Hyatt Regency Dallas*, No. 3:19-cv-1971-E (N.D. Tex.). He broadly brings claims of discrimination

and retaliation in violation of the ADA, the ADEA, Title VII, and the FMLA. *See* Dkt. No. 3 at 4-30.

I. Individual Defendants

All individual defendants have moved to dismiss in part because they cannot be liable to Stancu under these statutes as they were not his employer. *See, e.g.*, Dkt. No. 12 at 4-5, 6-8; Dkt. No. 18 at 4-5, 6-8. And the Court should dismiss Stancu's claims against them on this basis alone.

"Title VII does not impose liability on individuals unless they are 'employers.'" *Provensal v. Gaspard*, 524 F. App'x 974, 977 (5th Cir. 2013) (per curiam) (citing *Grant v. Lone Star Co.*, 21 F.3d 649, 653 (5th Cir. 1994)). The Fifth Circuit has "repeatedly rejected any individual liability under Title VII." *Baldwin v. Layton*, 300 F. App'x 321, 323 (5th Cir. 2008) (per curiam).[1] And individual liability under the ADEA and

---

[1] *See also Umoren v. Plano Indep. Sch. Dist.*, 457 F. App'x 422, 425 (5th Cir. 2012) (per curiam) ("Umoren's Title VII claims against the Individual Defendants were properly dismissed because 'relief under Title VII is only available against an employer, not an individual supervisor or fellow employee.'" (quoting *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 340 n.8 (5th Cir. 2003) (citing, in turn, 42 U.S.C. § 2000e(b)'s definition of "employer"))); *Brewer v. Lavoi Corp.*, No. 3:13-cv-4918-N, 2014 WL 4753186, at *3 (N.D. Tex. Sept. 24, 2014) ("Title VII provides for liability only as to an employer, as defined in the statutes, not an individual supervisor or fellow employee, ... regardless of whether the person is sued in his or her individual or official capacity." (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007); *Grant*, 21 F.3d at 653; *Smith v. Amedisys Inc.*, 298 F.3d 434, 448-49 (5th Cir. 2002))); *Jackson v. Fed. Express Corp.*, No. 3:03-cv-2341-D, 2006 WL 680471, at *14 (N.D. Tex. Mar. 14, 2006) (dismissing Title VII claim against a co-worker); *Chavez v. McDonald's Corp.*, No. 3:99-cv-1718-D, 1999 WL 814527, at *2 (N.D. Tex. Oct. 8, 1999) (dismissing Title VII claim brought against a supervisor in

the ADA is similarly limited.

The Fifth Circuit extended *Grant*'s holding to the ADEA. *See Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996) ("The statutory scheme of Title VII at issue in Grant is virtually identical to the statutory scheme of the ADEA at issue here. Both acts limit liability to employers with more than a minimum number of employees, and both define 'employer' to include agents of the employer. The plaintiffs have directed us to no salient distinction between the ADEA and its closest statutory kin, and we have found none. Therefore, we find that this Court's reasoning in *Grant* applies with equal force in the present context and hold that the ADEA provides no basis for individual liability for supervisory employees.").

This reasoning applies with equal force to the ADA. *See, e.g., Taylor v. Academic P'ships, LLC*, No. 3:19-cv-1764-K-BN, 2019 WL 6619808, at *4 (N.D. Tex. Nov. 5, 2019) ("The ADA prohibits employers from discriminating against a 'qualified individual with a disability on the basis of that disability.' 42 U.S.C. § 12112(a); *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2015). The ADA's definition of 'employer' is essentially identical to the definition contained within Title VII. *See* 42 U.S.C. § 12111(5)(A) ('The term "employer" means a person engaged in an industry affecting commerce who has 15 or more employees for each working day … and any agent of such person'). And courts interpret the ADA consistent with Title VII's

---

his individual capacity).

provisions. *See, e.g.*, *Brewer*, 2014 WL 4753186, at *3." (citation modified)), *rec. accepted*, 2019 WL 6619385 (N.D. Tex. Dec. 4, 2019).

But the FMLA is different. It "defines the term 'employer' to include, *inter alia*, 'any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer.'" *Coleman v. FFE Transp. Servs., Inc.*, No. 3:12-cv-1697-B, 2013 WL 1914932, at *4 (N.D. Tex. May 9, 2013) (quoting 29 U.S.C. § 2611(4)(A)(ii)(I)). And "[t]he Fifth Circuit looks to the FLSA when interpreting the reach of the term 'employer' under the FLMA." *Id.* (citing *Modica v. Taylor*, 465 F.3d 174, 186 (5th Cir. 2006)).

> Individual liability as an employer under this standard is "sufficiently broad to encompass an individual who, though lacking a possessory interest in the 'employer' corporation, effectively dominates its administration or otherwise acts, or has the power to act, on behalf of the corporation vis-a-vis its employees." *Reich v. Circle C Investments, Inc.*, 998 F.2d 324, 329 (5th Cir. 1993). Yet individual liability does not automatically accompany supervisory responsibility; even among those in "supervisory positions" the "FMLA does not contemplate holding individuals liable for corporate violations." *Burris v. Brazell*, No. 3:06-cv-814–K, 2008 WL 5220578 at *3 (N.D. Tex. Dec. 15, 2008). For liability to attach, an individual must "independently exercise control over the work situation." *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984). This requires both a sufficient level of control and a nexus to the protected rights at issue. *Id.* at 972 (holding individual liable because "[i]t was only he who could authorize compliance with the Fair Labor Standards Act"). Courts look to factors such as control over hiring and firing, wages, and workplace conditions in determining status as an employer. *Id.*; *Reich*, 998 F.2d at 329; *Dole v. Continental Cuisine, Inc.*, 751 F. Supp. 799, 802-03 (E.D. Ark. 1990). In analyzing a claim under the FMLA, the question becomes whether the defendant "exercised sufficient control over Plaintiff's ability to take protected leave to qualify as [an] employer[ ] under the FMLA." *Evans v. Henderson*, No. 99-C-8332, 2000 WL 1161075 (N.D. Ill. Aug. 16, 2000).

*Trevino v. United Parcel Serv.*, No. 3:08-cv-889-B, 2009 WL 3199185, at *5 (N.D. Tex. Oct. 5, 2009) (citation modified).

The individual defendant cannot be liable to Stancu under Title VII, the ADEA, and the ADA as a matter of law. And Stancu has not, through a pleading, made factual allegations that plausibly show, or from which it may be inferred, that an individual defendant was his "employer" under the FMLA. *Cf.* Dkt. No. 28 at 13-14 (response br.) ("Every single one of the defendants in this case had the ability to control in whole or in part Stancu's ADA, ADEA, and FMLA rights.").

The Court should dismiss all claims made against the individual defendants with prejudice.

II. <u>Hyatt</u>

Hyatt initially moved to dismiss Stancu's ADA, ADEA, and Title VII claims (but not his FMLA claims) for failure to exhaust administrative remedies. *See* Dkt. No. 17 at 6-9.

> Before a plaintiff can file a suit in federal court alleging employment discrimination under Title VII, he must exhaust his administrative remedies. He exhausts those remedies by filing "a timely charge with the EEOC, or with a state or local agency with authority to grant or seek relief from the alleged unlawful employment practice." "Exhaustion occurs when [a] plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue." The filing of an EEOC charge "'is a precondition to filing suit in district court.'" Upon receiving a statutory notice of right to sue, a plaintiff has ninety days to file a civil action pursuant to her Title VII claims. 42 U.S.C. § 2000e-5(f)(1). The ninety-day limitations period is strictly construed against all litigants, and *pro se* litigants are not excused from abiding by the limitations period.

*Reed v. Fas Pac Store*, No. 7:18-cv-164-O-BP, 2020 WL 853908, at *3 (N.D. Tex. Feb. 4, 2020) (citations omitted), *rec. accepted*, 2020 WL 833419 (N.D. Tex. Feb. 20, 2020).

The administrative exhaustion requirement also applies to claims under the ADA and the ADEA. *See Melgar v. T.B. Butler Publ'g Co., Inc.*, 931 F.3d 375, 378-79 (5th Cir. 2019) ("To bring a suit under Title VII, the ADA (disability), or the ADEA (age), a complainant must file a charge of discrimination with the EEOC to exhaust his administrative remedies." (citing *Price v. Sw. Bell Tel. Co.*, 687 F.2d 74, 77 (5th Cir. 1982) (Title VII); *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996) (ADA); *Foster v. Nat'l Bank of Bossier City*, 857 F.2d 1058, 1060 (5th Cir. 1988) (ADEA))).

But these "charge-filing instruction[s are] not jurisdictional…. [Instead,] they are properly ranked among the array of claim-processing rules that must be timely raised to come into play." *Fort Bend Cnty., Tex. v. Davis*, 139 S. Ct. 1843, 1846 (2019). Put differently, "[f]ailure to exhaust is an affirmative defense that should be pleaded." *Davis v. Fort Bend Cnty.*, 893 F.3d 300, 307 (5th Cir. 2019) (citations omitted), *aff'd*, 139 S. Ct. 1843.

> To obtain a Rule 12(b)(6) dismissal based on an affirmative defense, the successful affirmative defense must appear clearly on the face of the pleadings. In other words, [Hyatt is] not entitled to dismissal under Rule 12(b)(6) based on [this] affirmative defense unless [Stancu] has pleaded [himself] out of court by admitting to all of the elements of the defense.

*Taylor v. Lear Corp.*, No. 3:16-cv-3341-D, 2017 WL 6209031, at *2 (N.D. Tex. Dec. 8,

2017) (citations, quotation marks, and original brackets omitted); *see also, e.g.*, *Dunmars v. Ford Cnty., Kan. Bd. of Comm'rs*, No. 6:19-cv-01012, 2019 WL 3817958, at *3 (D. Kan. Aug. 14, 2019) ("The courts are clear that failure to exhaust administrative requirements can form the basis for a 12(b)(6) motion, so long as the 'grounds for the defense appear on the face of the complaint.'" (quoting *Cirocco v. McMahon*, 768 F. App'x 854, 858 (10th Cir. 2019) ("Although failure to exhaust is now an affirmative defense, it may be raised in a motion to dismiss when the grounds for the defense appear on the face of the complaint." (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007))))).

Stancu's attaching an EEOC charge and right-to-sue letter to his complaint makes those documents part of his complaint for purposes of Hyatt's motion to dismiss. *See* FED. R. CIV. P. 10(c); *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205; *Gill*, 941 F.3d at 511. So it is proper to consider Hyatt's exhaustion affirmative defense at this stage, at least as to the pleading before the Court. *Cf. Taylor*, 2017 WL 6209031, at *3 ("The amended complaint does not mention the filing of any charge with the EEOC or the receipt of a right to sue letter. Accordingly, with respect to her Title VII claims, the court cannot conclude that Taylor has pleaded herself out of court based on a failure to exhaust her administrative remedies."); *id.* at *3 n.5 ("The court does not suggest by its decision at the Rule 12(b)(6) stage that Taylor was not required to exhaust her administrative remedies with respect to her Title VII claims …."); *Nora v. Cushman & Wakefield*, No. 3:19-cv-2738-M-BN, 2020 WL 4573844, at

*4-*5 (N.D. Tex. June 22, 2020) (applying *Taylor* after the *Davis* decisions to deny dismissal for failure to exhaust where grounds for the defense we not pled), *rec. accepted*, 2020 WL 4569063 (N.D. Tex. Aug. 7, 2020).

> "The purpose of this exhaustion doctrine is to facilitate the administrative agency's investigation and conciliatory functions and to recognize its role as primary enforcer of anti-discrimination laws." Administrative exhaustion is important because it provides an opportunity for voluntary compliance before a civil action is instituted. For this reason, Title VII requires administrative exhaustion.

*Davis*, 893 F.3d at 307 (quoting *Filer v. Donley*, 690 F.3d 643, 647 (5th Cir. 2012)).

To determine "whether a plaintiff has exhausted a particular claim, [the Fifth Circuit has] noted that 'the scope of an EEOC complaint should be construed liberally.'" *Patton v. Jacobs Eng'g Group, Inc.*, 874 F.3d 437, 443 (5th Cir. 2017) (quoting *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006)). But this construction must be weighed against Title VII's goal of "trigger[ing] the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims." *Pacheco*, 448 F.3d at 788-89. So, to attain a balance between the two, courts in this circuit interpret

> "what is properly embraced in review of a Title-VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" *Id.* at 789 (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). "[Courts should] engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label." *Id.*

*Patton*, 874 F.3d at 443

Starting with the charge attached to the complaint (dated January 13, 2020), Stancu marked the boxes for retaliation, disability, and continuing action (identifying the date range that the alleged discrimination occurred as May 14, 2020 through January 8, 2020). *See* Dkt. No. 3 at 34. His narrative provides that

> [o]n or around May 13, 2019 I submitted my FMLA paperwork and it was approved, included in that paperwork was my request for a reasonable accommodation where my doctor informed the Respondent that I was "unable to perform the fast-paced job known as Unit 1." I believe that I subjected to disparate treatment, harassment and retaliation as a result of my request for a reasonable accommodation. Even though the Respondent agreed to the suggested reasonable accommodation as stated by my doctor they did not adhere to it and continued to send me on Unit 1 service calls and I received numerous write ups as a result of the harassment and discrimination.

*Id.* And Stancu concludes: "I believe that I was discriminated against based on my disability, and/or because I was regarded as disabled, in violation of the [ADA]." *Id.* at 34-35.

Liberally construed, this charge sets out failure-to-accommodate and retaliation claims under the ADA. But no investigation that could reasonably be expected to emerge from the substance of this charge would implicate Title VII (discrimination or retaliation based on race or sex) or the ADEA (discrimination or retaliation based on age). Nor would the statements in this charge lead to an investigation into several of the ADA claims that Stancu asserts – that Hyatt failed to promote him and refused to pay his works' compensation benefits. *See* Dkt. No. 3 at 22.

But Stancu responded to Hyatt's motion to dismiss in part by attaching to his response a new charge (dated August 23, 2020) and a new right-to-sue letter (dated September 3, 2020). *See* Dkt. No. 29 at 13-16. Stancu asserts, through this charge, that he was retaliated against based on age and disability on March 6, 2020, the date that he was terminated. *See id.* at 14. And Hyatt concedes, on reply, that, based on this new charge, Stancu has now exhausted claims of retaliatory discharge under the ADA and the ADEA. *See* Dkt. No. 31. But Hyatt continues to assert that all claims under Title VII and all claims under both the ADA and the ADEA, other than retaliatory discharge under either statute, remain unexhausted. *See id.* at 5 & n.2 ("As a result of this relief, the only surviving claims would be Plaintiff's retaliatory discharge claims under the ADA and ADEA and his FMLA-related claims.").

First, Stancu may not amend his complaint through a response brief or its attachments. *See* FED. R. CIV. P. 8(a); FED. R. CIV. P. 7(a); FED. R. CIV. P. 10(c). So the Court should only examine the complaint and its attachments. Doing so, Hyatt has successfully moved to dismiss based on an affirmative defense of failure to exhaust administrative remedies that appears on the face of the complaint as to Stancu's Title VII claims, his ADEA claims, and certain claims made under the ADA (failure to promote and refusal to pay workers' compensation benefits). Given his *pro se* status, the undersigned cannot find that a liberal construction of the January 13 charge results in a dismissal of Stancu's itemized ADA claims for failure to exhaust as broadly as Hyatt advocates.

Further, as Hyatt recognizes, *see* Dkt. No. 31, to the extent that Stancu has now exhausted an ADEA claim, he could move for leave to file an amended complaint to add the exhausted claim(s).

**Recommendation**

The Court should (1) grant the motions to dismiss filed by Defendant Ray Hunt [Dkt. No. 12] and Defendants Brett Killingsworth, Mark Spinelli, Samuel Molina, and Micha Bell [Dkt. No. 18] insofar as all claims against them should be dismissed because none of these defendants were Plaintiff John Stancu's employers under the applicable statutes; (2) grant Defendant Hyatt Corporation/Hyatt Regency's motion to dismiss [Dkt. No. 17] in part by dismissing Stancu's Title VII claims, his ADEA claims, and his ADA claims based on failure to promote and refusal to pay workers' compensation benefits for failure to exhaust administrative remedies; and (3) grant Stancu leave to file an amended complaint solely against Hyatt.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by

reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 26, 2021

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE